**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BURBACH AQUATICS, INC., as Successor to <br> DAVID F. BURBACH, d/b/a/ BURBACH <br> MUNICIPAL & CIVIL ENGINEERING, <br><br> Plaintiff, <br><br> v. <br><br> THE CITY OF ELGIN, ILLINOIS, <br> A Municipal Corporation, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Case No.: 08 CV 4061 <br><br> Judge Robert M. Dow, Jr. |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff Burbach Aquatics, Inc.'s *Daubert* motion seeking to strike the expert report and preclude the trial testimony of Defendant's expert, Daniel T. Nicholas [81]. For the reasons stated below, Plaintiff's motion is granted in part and denied in part.

**I.     Background**

Plaintiff Burbach Aquatics, Inc. ("Plaintiff") is a Wisconsin corporation engaged in business as an architectural and engineering firm specializing in the design of aquatic facilities. The City of Elgin ("Defendant") is a municipal corporation organized and existing under the laws of the State of Illinois and located in Kane County, Illinois.

Plaintiff's predecessor-in-interest, David F. Burbach, d/b/a/ Burbach Municipal and Civil Engineers, entered into a written contract with Defendant on or about March 8, 1995. Pursuant to the contract, Plaintiff agreed to renovate and replace pools and bathhouses in Elgin's Lords Park and Wing Park, and Defendant agreed to pay Plaintiff in exchange. The contract did not identify a specific date by which the projects were to be completed, but it did provide that the

1

"architectural services shall be performed as expeditiously and as consistently with the professional skill and care of the ordinary progress of the work." The contract did not define the terms "expeditiously" or "professional skill and care." Plaintiff alleges that it requested a one-year "extension" of time in order to enable it to apply for and acquire the necessary permits from the Illinois Department of Health, but that Defendant declined the request and sought to proceed on an "expedited" schedule. The project at Wing Park was completed without dispute. The Lords Park project suffered various delays, resulting in the park's pool opening to the public approximately five weeks late. As a result, Defendant has not paid Plaintiff the full amount due under the contract.

Plaintiff brought a one-count complaint against Defendant alleging that Defendant breached the contract by failing to pay Plaintiff for the services that Plaintiff allegedly performed for the Lords Park project. Plaintiff seeks a judgment in the amount of $135,559 plus interest (the compensation for the phase of the project that Defendant argues has been forfeited). Defendant counters that Plaintiff materially breached the contract by failing to substantially perform all of its duties and responsibilities pertaining to the Lords Park project, and therefore is not entitled to full payment of the contract amount. Specifically, Defendant contends that Plaintiff did not substantially perform its duties during the construction phase ("Phase III") of the project, resulting in the five-week delay in the opening of the Lords Park pool.

## II. Legal Framework for a Rule 702 Analysis

Federal Rule of Evidence 702 and the Supreme Court's decision in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), provide the legal framework for the admissibility of expert testimony. See *United States v. Pansier*, 576 F.3d 726, 737 (7th Cir. 2009). Rule 702 permits the admission of expert testimony if "scientific, technical, or other specialized

2

knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Rule 702 requires that the district court act as a "'gatekeeper' that must determine whether proffered expert testimony is reliable and relevant before accepting a witness as an expert." *Winters v. Fru-Con Inc.*, 498 F.3d 734, 741-42 (7th Cir. 2007) (quoting *Autotech Tech. Ltd. P'ship v. Automationdirect.com*, 471 F.3d 745, 749 (7th Cir. 2006)); see also *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 1337, 147-49 (1999); *Daubert*, 509 U.S. at 589.

In assessing a motion to exclude testimony under Rule 702, the Court must consider whether the proposed opinion witness (1) is qualified to offer opinion testimony under 702, (2) has employed a reliable methodology, (3) proposes to offer opinions that follow rationally from the application of his "knowledge, skill, experience, training, or education," and (4) presents testimony on a matter that is relevant to the case at hand, and thus helpful to the trier of fact. See *Kumho Tire*, 526 U.S. at 151-53; *Gen Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *Daubert*, 509 U.S. at 589-93; see also *Walker v. Soo Line R.R. Co.*, 208 F.3d 581, 586 (7th Cir. 2000). "The proponent of the expert bears the burden of demonstrating that the expert's testimony would satisfy the *Daubert* standard." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). District judges possess considerable discretion in dealing with expert testimony. *Carroll v. Otis Elevator Co.*, 896 F.2d 210, 212 (7th Cir. 1990); see also *Gen. Elec. Co.*, 522 U.S. at 141-43 (holding that abuse of discretion standard applies in reviewing district court rulings on admissibility of proposed Rule 702 opinion testimony).

First, in regard to qualifications, Rule 702 allows parties to introduce expert opinions if the expert has the requisite "knowledge, skill, experience, training, or education." Anyone who has relevant expertise and can offer responsible opinion testimony that is helpful to a judge or jury may qualify as an expert witness. See *Tuf Racing Prod., Inc. v. Am. Suzuki Motor Corp.*,

3

223 F.3d 585, 591 (7th Cir. 2000). In assessing a proposed witness's qualifications, a court should consider the witness's full range of education, experience, and training. *LG Elec. U.S.A., Inc. v. Whirlpool Corp.*, 661 F. Supp. 2d 940, 951 (N.D. Ill. 2009). In addition, given that "[m]odern science is highly specialized," a court must take care to confirm that a proposed expert is qualified to offer opinion testimony in the specific area of his or her proposed testimony. *Braun v. Lorrillard, Inc.*, 84 F.3d 230, 235 (7th Cir. 1996).

With respect to the second factor a court must consider in a Rule 702 analysis, *Daubert* lists a number of relevant considerations in evaluating an expert's reasoning and methodology, including testing, peer review, error rates, and acceptability in the relevant scientific community. *Daubert* at 593-94. "[T]he test of reliability is flexible," however, "and *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Kumho,* 526 U.S. at 141 (internal quotation omitted). "Rather the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." *Id.* at 142 (emphasis omitted); see also *Pansier,* 576 F.3d at 737 (the Seventh Circuit "gives the [district] court great latitude in determining not only how to measure the reliability of the proposed expert testimony but also whether the testimony is, in fact, reliable") (emphasis omitted) (citing *Jenkins v. Bartlett,* 487 f.3d 482, 489) (7th Cir. 2007); *Lewis,* 561 F.3d at 704-05 ("the law grants the district court great discretion regarding the manner in which it conducts that [*Daubert*] evaluation"). For example, a district court may deem reliable the testimony of a witness whose expertise is based on practical experience rather than data. See *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010).

Third, in assessing the admissibility of proposed expert testimony, the Court's "focus, of course, must be solely on principles and methodology, not on the conclusions that they

generate." *Daubert*, 509 U.S. at 595. However, as the Supreme Court has recognized, "conclusions and methodology are not entirely distinct from one another," and while "[t]rained experts commonly extrapolate from existing data[,] * * * nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec.*, 522 U.S. at 146. In other words, "[a]n expert who supplies nothing but a bottom line supplies nothing of value to the judicial process." *Wendler & Ezra, P.C. v. Am. Int'l Grp., Inc.*, 521 F.3d 790, 791-92 (7th Cir. 2008) (quoting *Mid-State Fertilizer Co. v. Exch. Nat'l Bank,* 877 F.2d 1333, 1339 (7th Cir. 1989)). To ensure that the expert's conclusions follow reliably from his or her methods, the Seventh Circuit has stressed that "the district court is responsible for making sure that when scientists testify in court they adhere to the same standards of intellectual rigor that are demanded in their professional work." *Braun*, 84 F.3d at 234. In short, "[i]t is critical under Rule 702 that there be a link between the facts or data the expert has worked with and the conclusion the expert's testimony is intended to support." *United States v. Mamah,* 332 F.3d 475, 478 (7th Cir. 2003). Where that link is missing, "[a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec.*, 522 U.S. at 146.

Finally, Rule 702 bars the admission of an expert's opinions unless such opinions will assist the trier of fact to understand the evidence or determining a fact in issue. In order to satisfy this "helpfulness" requirement, expert testimony must satisfy two elements. First, the proffered testimony must relate to a fact in issue: "expert testimony which does not relate to an issue in the case is not relevant, and, ergo, non-helpful." *Porter v. Whitehall Laboratories, Inc.*, 9 F.3d 607, 613 (7th Cir. 1993) (quoting *Daubert*, 509 U.S. at 591). Second, the proffered testimony must assist the fact finder in understanding what otherwise might be outside its grasp.

See *S.E.C. v. Lipson*, 46 F. Supp.2d 758, 763 (N.D. Ill. 1998); *Sommerfield v. City of Chicago*, 254 F.R.D. 317, 329 (N.D. Ill. 2008) (holding that "[e]xpert testimony is helpful to the [trier of fact] if it concerns a matter beyond the understanding of the average person").

## II. Analysis

Defendant has retained an architectural design expert, Daniel T. Nicholas, in support of its contention that Plaintiff failed to substantially perform on the contract at issue. Nicholas is a trained and licensed architect who specializes in the design of golf and country club clubhouses and aquatic facilities in suburban Chicago. His expert report and proposed expert testimony concern the norms, customs, and practices of those who design and construct public aquatic facilities and provide opinions that Plaintiff failed to comply with those norms, customs, and practices during implementation of the Lords Park project. Nicholas's report and proposed testimony address: (1) the services that Plaintiff agreed to provide under the contract; (2) Plaintiff's alleged failure to take the necessary actions – including obtaining required permits from the Illinois Department of Health and failure to hire a single general contractor – to complete the project in a timely fashion; (3) Plaintiff's alleged failure to communicate with Defendant and advise Defendant of the difficulties in supervising and coordinating the work; and (4) purported inaccuracies in surveys, contracts, and other construction documents. Nicholas also proposes to opine on the understanding within the architectural profession of the terms "expeditious" and "professional skill and care" as used in Plaintiff's contract with Defendant.

Plaintiff's *Daubert* motion [81] seeks to strike Nicholas's report and testimony on the grounds that: (1) Nicholas lacks the qualifications to testify regarding the causes of delay in completion of the project; (2) Nicholas's methodology and opinions regarding the cause of the delay are unreliable; and (3) Nicholas's opinions regarding the meaning of the contract between

Burbach and the City are irrelevant and improper expert testimony that will not assist the trier of fact.

### A.     Qualifications

Plaintiff concedes that Nicholas is qualified as an architectural expert, but contends that his specialty is in building golf facilities, not aquatic facilities. To the extent that Nicholas has worked on aquatic facility projects, Plaintiff submits that he has typically hired an engineering consultant to assist in the design and supervision of the swimming pool elements of the projects.

Although it may be true that Nicholas has not worked alone in building aquatic facilities, it is clear from Nicholas's *curriculum vitae* that he has been involved in the design and construction of aquatic facilities in Illinois for 15 years. The Court concludes that Nicholas's practical experience qualifies him to present expert testimony on the design and construction of aquatic facilities. See, *e.g.*, *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000) (explaining that a court should consider, *inter alia*, a "proposed expert's full range of practical experience" in determining an expert's qualifications to offer opinion testimony). Any limitations in Nicholas's background relating to his work on aquatic facilities go to the weight that should be given to his testimony, not its admissibility, and thus are properly the subject of cross-examination. See, *e.g.*, *Walker v. Soo Line R.R. Co.*, 208 F.3d 581, 586-87 (7th Cir. 2000) (explaining that "the factual underpinnings of expert testimony may be subject to counterattack," including through "[v]igorous cross-examination" and "presentation of contrary evidence").

Plaintiff also argues that any opinions from Nicholas concerning why the Lords Park project was delayed should be excluded because Nicholas is not a "delay expert." Indeed, Nicholas acknowledges in his report that he has no experience performing a construction delay analysis and is unfamiliar with the techniques used in such analysis; he also states that he has

7

never before provided expert testimony regarding the causes of construction delays. Plaintiff therefore argues that Nicholas is not qualified to testify about the reasons for the five-week delay in completion of the Lords Park project. In response, Defendant states that Nicholas has direct professional experience doing the type of pre-construction activities – such as obtaining permits and submitting plans – that Plaintiff admits consumed a significant amount of time during the project. In view of Nicholas's practical experience, Defendant submits that Nicholas is qualified to testify to the industry standard for submitting permit applications and obtaining building permits, designing a public aquatic facility, and completing such a facility in an expeditious manner.

In the Court's view, both sides have valid points in regard to Nicholas's qualifications and lack thereof in regard to the potential areas of Rule 702 opinion testimony concerning the dispute in this matter. On the one hand, the Court concludes that Nicholas is qualified through experience to present expert testimony on the design and construction of aquatic facilities, including the process for obtaining permits and other Phase III-related activities and whether Plaintiff satisfied industry norms and customs. On the other hand, Nicholas may not give opinions regarding analytical techniques with which he has no experience, such as "construction delay analysis."

### B. Reliability

Plaintiff also challenges Nicholas's proposed testimony as unreliable on the ground that his opinion regarding the cause of the five-week delay is speculative and methodologically unsound. Specifically, Plaintiff contends that Nicholas's opinions are unreliable because they (1) were formed only on the basis of his review of the documents produced by Plaintiff and thus do

not take into account any documents produced by the City and (2) do not bear on a number of issues that are in dispute.

In response to the latter point, Defendant correctly notes that expert testimony need not concern the (or an) ultimate issue in the case in order to be reliable. See *Smith*, 215 F.3d at 718 ("The expert need not have an opinion on the ultimate question to be resolved by the trier of fact" to provide testimony that would assist the trier of fact "with its analysis of any of the issues involved in the case"); *Walker*, 208 F.3d at 587 (same). Thus, Nicholas may testify regarding the normal process for obtaining permits, communicating plans with sub-contractors, etc. – all of which may by chain of inference assist the jury in drawing conclusions regarding timeliness or completeness of performance in Phase III of the project – without himself opining on issues such as the cause of delay, how much of the delay (if any) is attributable to Plaintiff (or any other cause or party), or whether Phase III was substantially performed.

And, in regard to Plaintiff's concern about the scope of Nicholas's review of the pertinent documents in forming his opinions, the Court is not persuaded that Nicholas's focus on the documents provided by Plaintiff renders his opinions unreliable and inadmissible. Plaintiff has not described the additional documents produced by Defendant or how they might affect the accuracy and/or reliability of Nicholas's expert analysis and opinions. To the extent that Plaintiff believes that there are documents in the case to which Nicholas may have given short shrift, Plaintiff is free to explore those documents in cross-examination. See *Walker*, 208 F.3d at 586-87.

    **C.**    **Relevance; Helpfulness to the Trier of Fact**

Plaintiff's raises several objections regarding the relevance and helpfulness of Nicholas's proposed testimony. First, Plaintiff contends that Nicholas's testimony regarding the timeliness

of completion of Phase III is not relevant because the contract did not set forth a specific date by which the project was to be completed and because construction was not delayed by any permit problems in any event. The acquisition of necessary permits is clearly relevant to the case given that completion of the construction project depended upon obtaining the permits. Furthermore, the local procedure for acquiring the relevant permits is a matter beyond the ken of the lay juror. Therefore, should Nicholas offer any testimony on the matter, his opinions would be both relevant and helpful to the trier of fact. But even assuming that Nicholas does not offer such opinions, his testimony still may be helpful to the trier of fact on other points, even if he does not offer any opinions on the ultimate issues in the case. See *Smith*, 215 F.3d at 718; *Walker*, 208 F.3d at 587 (same).

Second, Plaintiff argues that Nicholas may not provide legal opinions or conclusions regarding the meaning of the contract. The Court agrees with Plaintiff that any conclusions of law that Nicholas might seek to offer in this case must be excluded. See *RLJCS Enterprises, Inc. v. Professional Benefit Trust Multiple Employer Welfare Benefit Plan & Trust*, 487 F.3d 494, 498 (7th Cir. 2007) ("Argument about the meaning of * * * contracts * * * belongs in briefs, not in 'experts' reports'"); *Sommerfield v. City of Chicago*, 254 F.R.D. 317, 330 (N.D. Ill. 2008) ("expert testimony that contains a legal conclusion that determines the outcome of a case is inadmissible"); *Apotex Corp. v. Merck & Co., Inc.*, 2006 WL 1155954, at *8 (N.D. Ill. Apr. 25, 2006) (excluding expert testimony that consisted of "plainly inadmissible legal conclusions" that "would be completely unhelpful to the fact finder"); *Clintec Nutrition Co. v. Baxa Corp.*, 1998 WL 560284, at *9 (N.D. Ill. Aug. 26, 1998) ("Legal conclusions are not admissible because they are not helpful to the trier of fact"). The critical issue for the parties, the Court, and the witness himself to bear in mind is what the Seventh Circuit has described as the "difference between

stating a legal conclusion and providing concrete information against which to measure abstract legal concepts." *United States v. Blount*, 502 F.3d 674, 680 (7th Cir. 2007). The former is prohibited; the latter is not.[1] To the extent that Nicholas proposes to inform lay jurors of the technical implications of the terms of art used in the contract as understood by professional architects, his testimony may provide the type of concrete information against which jurors may measure abstract legal concepts. However, should Nicholas attempt to offer opinions on the legal duties imposed on the parties under the terms of the contract (as he reads them), his testimony would stray into forbidden argument about the meaning of contracts – a question of law on which expert testimony is inappropriate.

Third, Plaintiff argues that because Nicholas will not tie his opinion regarding Plaintiff's performance of Phase III to any assessment of the cost or compensation that Defendant is entitled to withhold, the opinion will not be helpful to jurors. But, again, Nicholas need not testify to an ultimate issue in the case. He does not hold himself out to be an expert on the valuation of architectural services. His opinion on the architectural services themselves – independent of any cost assessment of the work that Plaintiff did or did not perform – clears the low bar of relevancy and may assist the trier of fact in understanding facts at issue that otherwise may be outside of their grasp as laypersons unfamiliar with the design and construction of public aquatic facilities.

---

[1] For example, the case law teaches that while "expert testimony may be allowed when it addresses [a] custom or practice in a particular trade, as it relates to a contract dispute," an expert "would not be permitted to offer his opinion on how, as a matter of law, the contract should be construed." *Klaczak v. Consolidated Med. Transp.*, 458 F. Supp. 2d 622, 636-37 (N.D. Ill. 2006) (citing *W.H. Smith Hotel Servs. v. Wendy's Int'l, Inc.*, 25 F.3d 422, 429 (7th Cir. 1994)); see also *Connell v. KLN Steel Prods., Ltd.*, 2009 WL 691292, at *9 (N.D. Ill. Mar. 16, 2009) ("a legal opinion as to the operation of a contract under the relevant law is not admissible").

### III. Conclusion

For the reasons and to the extent stated above, the Court grants in part and denies in part Plaintiff's motion to strike the report and preclude the Rule 702 opinion testimony of Daniel Nicholas.

Dated: January 18, 2011

                                            Robert M. Dow, Jr.
                                            United States District Judge